Good morning, may it please the court, Mr. Funnell, members of the gallery, I am here on behalf of Petitioner Herbert Andy Anderson. Prior to trial, Mr. Anderson was a successful businessman, he was a family man, he was a husband and active supporter of the community. He now resides at the Fort Worth Medical Center with a laundry list of health issues and wanted me to personally extend the thanks for the opportunity to address this court on the issues before it. The certificate of appealability issued by Judge Priscilla Owen in this matter included two issues. First, that appellate counsel was ineffective for failing to make a relevant and necessary argument under the plain error standard of review. Secondly, whether the certificate of appealability was issued concerning whether the government knowingly used material perjured testimony. I want to return to the first issue and that being ineffective assistance of counsel. To provide the court a little background of how we got here, this arose from a trial in Judge District Court John McBride's court. This is in his first rodeo concerning the draconian closing argument and trial limitations that man has placed upon persons in his court. In 1996, this court gave a scathing review of what they termed the efficiency of John McBride's trials and stating that expediency cannot trump justice and the constitution. This court stated that if it is to look at efficiency in a trial, as it must, it must also carry out the duties of constitutionally guaranteeing a fair trial. And they urged him at that time to reevaluate his methods in light of those findings. Well, he didn't get that message. And the consequences of that are the results that result in my appearance before this court. Had we ever reversed a conviction, though, based on the time given for closing argument? I believe that basically in this court they have held in this panel, for instance, that the time limitations as applicable were too strict. But the finding, and to address the court directly, I don't recall a holding on that, but they basically found that five minutes was too short in this matter. And it was the failure of appellate counsel to bring that forward to this court that results in the five minutes. The appellate counsel did argue, did challenge the five minutes. I think your argument is they didn't argue it under plain error. They were arguing it under a standard that would have been better for their client abuse of discretion. And so what strikes me as a little different about your ineffective assistance claim, typically an ineffective assistance of counsel claim is arguing that counsel wasn't assertive or aggressive enough in representing her client. For example, you cite the cases where appellate counsel doesn't even bring a winning claim on appeal. Or in the trial court, the counsel fails to object or fails to call a witness who would have helped the defendant. All these things were counsel's not being aggressive enough in defending his or her client. Yours is basically saying, your claim is basically saying counsel was too aggressive because they were pushing for this abuse of discretion standard. And you're saying they should have taken a more cautious or timid approach and admitted, oh, this isn't preserved, it's plain error. Can you think of any other, I guess two questions, can you think of any other ineffective assistance claims that have been recognized where counsel should have been less aggressive? And two, doesn't that, it creates an incentive that lawyers, if they're afraid of getting a writ filed on them later, they're going to take these positions that aren't always in the best interest of their client. Because to just come out and admit it's plain error, that creates, as you know, a very steep hurdle for most defendants. I would absolutely agree with your honor at this point, that it does create an additional hurdle, but it is also the duty of appellate counsel to correctly frame the issues at all times. That's the issue before the court. It's not the fact that he was too aggressive in this matter, it was the fact that he failed to address the issue before the court that was held in Holt itself, and I believe, standing on all fours, to not only be deficient but also to be prejudicial to Mr. Anderson. But counsel, you're saying he failed to address the issue. He raised a concern about the limited time given for closing argument, didn't he? Wasn't that concern raised by appellate counsel? It absolutely was, and found by the Holt panel to be a concern for them that five minutes was too short. But when you look at the way it was raised, as they pointed out in Holt, it was the failure to argue the prejudice that resulted therefrom. He didn't make any argument how he was going to be harmed by that five-minute deprivation. But wasn't that largely because there was no offer of proof in the trial court by defense counsel? I mean, it seems to me that's, if you want to look at how this whole thing transpired, the bigger problem, as between trial and appellate counsel, is that trial counsel failed to, he objected, he got just one extra minute. Then he didn't object again, and he didn't make an offer of proof, saying, well, if I had five or ten more minutes, I would have argued all this. Isn't that the bigger problem here? What trial counsel failed to do? It absolutely is, but it does not absolve the appellate counsel of correctly framing the issue and bringing forth the issue of prejudice before the court. Because it seems to me, it's almost like an architect, if I've said I want a square house and I end up with a round house, well, okay, I've got to make that work somehow on direct appeal. Without an offer of proof, what should appellate counsel have argued under, if he had argued plain error and prejudice? What would he have looked to to support that prejudice without anything in the trial record? Let me first point out, to answer the court's concerns, that the whole panel stated that on appeal, appellant's counsel did not argue how his time would have been different if allowed additional time. And then they stated, without an argument that would establish prejudice, this court found itself unable to find plain error. The record, as I pointed out in my brief, was replete with issues that could have been argued on direct appeal. There was a motion, a Rule 29 argument, that allowed a cornucopia of issues to be brought that occurred during the trial that could have occurred had appellate's counsel been given a longer time. You're saying he should have had a fallback position to say that, well, if plain error applies, this is how I would meet that. Well, frankly, I don't know how plain error didn't apply. And as far as deficiency, we can look to... Well, I'm sure, you know, you can hardly fault him for asking for a better standard of review, though, as Judge Costa says. I agree with that point, Your Honor. But it's also, I believe, disingenuous to argue that abuse of discretion applied when there was no supporting way that you were ever going to get there. If we go back to law school... Well, there was an objection, though. It wasn't like the issue was completely ignored. What, they got four minutes, I think, at first? There was an objection. They got an additional minute. So I think the panel ultimately found, well, you should have then objected to the five minutes. But, I mean, there was an objection to the overall shortness of the time when the court first imposed it. So was it really unreasonable to try to push for this better standard of review? Well, yes, because, again, following basic Hornbook law, he showed no, he made no offer of proof following his closing argument of what he could have argued had he been provided additional time. And therefore... Well, that's trial counsel. Trial counsel, yes. And so, therefore, you have, as the whole panel said, no ability to display prejudice from that because the trial counsel didn't spell it out. And on the record, it was there. And the government has argued in their brief that basically this court could have looked to those additional sources cited in my brief, such as the Rule 29 motion, and said, well, look, it's right there. They could have considered that. But that violates one of the basic premises of appellate law, is that I, as an appellate attorney, have a duty to bring forth those arguments before this court and bring them in the brief. You guys are not called upon to start fishing around making my arguments. That didn't occur in this case. And I believe that that not only demonstrates, I believe that demonstrates ineffective assistance of counsel because the failure to argue the third argument in this case. And that states that a court must correct a plain error if it affected appellant substantial rights. He must demonstrate it affected the outcome of the district court proceedings. And in looking at how we demonstrate prejudice in this matter, we look at the focus on the outcome of the appeal. The whole panel stated clearly, you didn't do that. We can't find plain error because you didn't tell us why this argument was prejudiced. The failure to make that argument was prejudicial. What should he have said then in support of that argument, the prejudice argument? Again, I go back to the Rule 29. And I cite that basically, again, I think the whole panel states it clearly. Tell us why this was harmful. And again, you had a cornucopia of issues. You had the trial counsel facing 25 witnesses, 3 days, 200 trial exhibits, and you had a panel of 164 text message exhibits. Plus, Mr. Anderson also had two additional counts of money laundering to wade through. So in that matter, to where we look at, and this court in gray stated, look, if it hampers the jury's ability to understand the information and issues at trial, which it clearly had to, it clearly had to because he had a forest of matters to wade through. So this court stated in that case, if it hampers their ability to understand the issues, that shows prejudice. And reminding the court in Herring, the Supreme Court stated, a persuasive summation could spell the difference for a defendant between liberty and unjust imprisonment. I see my time is growing a little short, so I'm going to talk a little bit about the standard of whether the government knowingly used material and perjured testimony. There are some differences of whether knowing or should have known applies. And again, I can address that briefly. I believe Augers and several other cases address that issue. But the court doesn't need to reach that issue because we know that one of the witnesses stated specifically in the record that I have been told directly from witnesses and defendants in this case, they have lied and fabricated events under oath at trial and encouraged by the government and the drug administration authority. I would argue that that alone establishes that the government was on notice of this. And again, I would urge the court to review the brief in this matter because frankly, with 152 left, I'm not going to have time to go over. Which of the four witnesses do you think is closest to tying the government to the falsehoods? I believe that was Mr. Bernie and I'm trying to, David Bernie. He's the one who said that was the story I was told to come up with. Right. There's also the emails to where the government claimed that Mr. Bernie was the one who said that Mr. Anderson and a co-defendant were texting back and forth about a drug deal when the surveillance shows that they're sitting in the same room at that time. There's the testimony of the Hispanic gentleman who supposedly conducted a face-to-face drug deal with Mr. Anderson and did not know who he was. You're fighting a factual finding that the government didn't know of any false testimony too, aren't you? Well, the factual findings, again, I believe in the certificate of appealability are not binding upon this court and I believe that this court can do an independent decision based upon that. And again, we had no opportunity to present those facts to the district court in a hearing before the court. Those were found just basically on the affidavits presented to the court. I will return my remaining time to the court. You may proceed. Thank you, Your Honor. Good morning. May it please the court, my name is Tim Funnell. I represent the government in this case. I'd like to take the certified issues out of order if I could because the Creel claim, the knowing presentation of perjury claim, there is a statement in Mr. Anderson's reply brief that the government needs to respond to. In that reply brief at page 7, Mr. Anderson indicates that by focusing on the lack of knowledge element, the government must be agreeing or apparently in agreement that the trial was unclear. The government does not agree with that statement at all. We have evidence disproving the statements of these four men to the extent that they are relevant to the Creel claim, but that issue is not squarely before this court because the district court decided that based upon what Mr. Anderson submitted here, that it didn't even need to reach the issue of whether false testimony was presented because Creel clearly requires that the government knowingly present perjured testimony. I disagree with counsel that there is some question about whether that means no or should have no. Creel is crystal clear on that point that there has to be some sort of knowledge on the government's part. The fact that the defense continually tries to bring in this morphed standard, this watered down, should have known standard is indicative of how they cannot prove actual knowledge. Well, let's say it's actual knowledge. Why doesn't, and there's four statements they rely on, Bernie says it's a little bit unclear certainly but first of all he's talking about a debrief and then he said that was the story I was told to come up with. So it's a little bit of a passive sentence, but wouldn't you agree that if it was the government who told him to come up with that story, someone involved in the prosecution, that that would at least entitle Mr. Anderson to a hearing on whether this is truthful or not? Yes, if indeed there was evidence before the district court in this record that the district court could make that reasonable inference, then yes, that would get him to an evidentiary hearing. Well, it seems ambiguous. How do you know who told him to come up with this story? Well, exactly, and ambiguity doesn't carry the day on knowledge. It's the defendant. Not under the hearing standard, though, just to get a hearing, far long ways from winning your claim, it says you're entitled to a hearing unless the motion and files and records conclusively show the prisoner is not entitled to relief. So given, I mean, it sounds like we agree this statement's a bit ambiguous as to who told him to come up with the story. Doesn't that necessarily then mean the record does not conclusively reject the claim? The burden is on Mr. Anderson. Mr. Anderson, the case law also requires that the movement bring independent indicia of the likely merit of his allegations. It's not enough just to simply throw out a statement and say, well, this could have been the government. This ambiguous statement could be attributed to the government. Therefore, that gets us an evidentiary hearing. Instead, what the court is able to do is look at the record as this district court did in the light favorable to the move-on. But remember, again, it is the move-on's burden to vacate this presumptively valid conviction and sentence to entitle him to an evidentiary hearing. And based on false or misleading testimony, it's clear that the government has to know about it. And also, even to get discovery in a 2255, this court's case law and case law of the Supreme Court clearly establishes that 2255s, discovery proceedings, evidentiary hearings are not supposed to be fishing expeditions. You have to bring forth specific evidence to support your allegations. It's not that you have to prove it at that point. Well, and they have four different people who have come forward, and I think it's clear on the face of their statements that they're saying that there was false information given. Obviously, whether that's true or not, who knows? But at least a couple of them, Bernie and one or two others, do suggest that the government had involvement in that. A COA was granted, right? Judge Owen found this was a debate. Reasonable jurists could debate this claim. Doesn't that necessarily mean you get a hearing under the statute that says you're entitled to a hearing unless it's, as I quoted, it's conclusively established that you're not entitled to relief? No, I don't believe so because, again, the COA was granted on whether the government knowingly introduced perjured testimony. This court isn't reviewing a factual determination that was made during an evidentiary hearing because we haven't reached that point. Instead, what you are deciding is whether the district court committed error in deciding on the face of these four submissions, whether there is enough of a basis to warrant going forward to an evidentiary hearing. Just to make sure that I clarify here, we have four statements. Two of them, Bernie and Johnson, were not witnesses at the trial. Mr. Medina was not a witness at the trial. He was a co-defendant. He doesn't say anything about governmental knowledge. He just doesn't. Who do you think, Bernie, who do you think he refers to when he says he was told to come up with the story? Right after talking about a debrief. We all know what a debrief is. We do, and that's an important point, Your Honor, because if we want to look at Mr. Bernie's statement, a couple things have to be taken into consideration. He attributes this to Mr. Bernie. He's sitting in jail with Mr. Adams, and Mr. Adams is making all of these disclosures about how when he testified at trial, my trial testimony went against my factual resume. Well, Mr. Adams' factual resume had already been signed and filed. It's part of the record in this case. He had signed it and filed it in December. Trial was the following January. If indeed Mr. Adams' testimony had gone against his factual resume, certainly it would have been brought to this Court's attention and all those inconsistencies would be pointed out. It's not, and the simple truth is because Mr. Adams' testimony did not go against his factual resume. And so that's one thing. The other thing is, if we look at Mr. Johnson's statement. But who do you think, I'll go back to my question, I don't think it was answered, who told Adams to come up with the story if it wasn't the agents in the debrief? That's what I was just going to get to, because if we look to Mr. Johnson's statement, what he says is that, to use his words, he's sitting in jail with these gentlemen, with Adams, Flitty, and Coleman, and he says, I heard with my own ears and saw with my own eyes, these guys came up with the story. He specifically takes the government out of the equation. That Mr., according to Mr. Johnson, when he is listening to these three people, including Mr. Adams, who is part of Mr. Bernie's telephonic deposition, he says it was these three guys who came up with the story, not the government. So, and then if we look at Mr. Johnson's statement in more depth, he says, yeah, it was these three guys who came up with the story. But then he immediately backtracks and he says, well, I never did hear what the story was going to be from Mr. Adams, I never heard it from Mr. Flitty, and Mr. Coleman say that he was going to come up with the idea of saying that there were drugs all over the pool table at Mr. Anderson's pool house. Well again, wouldn't that be something that the defense would want to bring in and show that Mr. Coleman had made either prior consistent or inconsistent statements to support their theory? They don't do that because as Mr. Coleman testified at trial, at the time he was arrested in November of 2009, he had already told the officers that, about the drugs, the meth, all over the pool table. So again, the defense has had every opportunity. Remember, the gentleman who got these three telephonic depositions was an attorney in Fort Worth named John White. John White testified on Mr. Anderson's behalf at trial as a character witness. He also made a statement on Mr. Anderson's behalf at sentencing. And according to Mr. White's own self-description, he was Mr. Anderson's best friend. So clearly he was incentivized to go out and speak to these gentlemen and get as much information to support this theory about government subordination of perjury as humanly possible. And yet, this is all that he came up with. To answer the court's question, if all that they can come up with, despite having every incentive to do so, is one ambiguous statement about the story that I was told to come up with, and then we look at Mr. Johnson's statement to try and figure out the source of that, that is not enough to justify an evidentiary hearing. So the district court was certainly correct in that regard. Returning to the first certified issue, the government listened this morning, and we certainly read in the brief about how the defense interprets both the direct appeal panel's decision and the importance of the Rule 29 motion. That the Rule 29 motion, according to counsel this morning, presented a cornucopia of arguments that could have been brought forth by appellate counsel. Well, that Rule 29 motion was before the panel on direct appeal. It was part of the record. After trial, trial counsel brought the Rule 29 motion, it was in written form, it's part of the record, and presents a cornucopia of arguments, of meeting out of the evidence and issues, to use counsel's words in their, in their brief. And because the direct appeal panel made very clear its strong disagreement with the district court's truncation of the closing argument, what the direct appeal panel said is, after we have searched the record, we conclude that the record does not permit us to find that the district court plainly attributed to appellate counsel's citation to the wrong standard of review. This was a direct appeal panel that was, clearly had its radar up, because it disagreed with the length of closing argument. How much time did the government have? I'm sorry? How much time did the judge give the government to argue? The government had ten minutes, your Mr. Anderson requested an additional minute, so he had five, and so some of the other, the two other defendants, they adjusted their time. So again, it is the record and the evidence that was before the district court. There is nothing that is presented to this court now, that wasn't before the direct appeal panel then. Not only did the direct appeal panel have that Rule 29 motion and the cornucopia of arguments, but also appellate counsel, in addition to raising the closing argument issue, raised the sufficiency of the evidence. And in arguing the insufficiency of the evidence, it required this court to go back on direct appeal and look at all of the various pieces of evidence, the witness testimony, the exhibits, the text messages, etc. All of those things were clearly within the record before the district court, before the direct appeal panel, and it informed its decision about what could have been argued. And it is not surprising that the direct appeal panel would make a statement saying that without an argument from appellate counsel to establish prejudice, we are also not able to find plain error. But it made that statement in the closing portion of its plain error argument. It had already stated above that, that the record does not permit us to find plain error. So regardless of whether there was or was not an argument out there for appellate counsel to somehow establish prejudice, the direct appeal panel had already reached its decision based upon the record. In addition, what I would also point out is Mr. Anderson, in this 2255, presents a list of arguments that could have been made, in addition to those that were in the Rule 29 motion. The district court correctly looked at those and said most of these, if not all these, were discussed in closing argument. And I would refer the court to that discussion. But importantly, something else that needs to be highlighted is that this is a jury that found Mr. Anderson not guilty of count four of the concealment money laundering. The direct appeal panel made note of that. And it's important to inform this court's decision on the ineffective assistance, because clearly the jury had accepted the argument from the defense that Mr. Anderson was engaged in legitimate business dealings. That's why he received the $160,000. They did not believe that he was trying to conceal that as part of a money laundering scheme. So now for the defense to come in and say, well, they should have harped more on his business acumen and his legitimate business dealings, they didn't need to hear more of that. They had already been convinced that Mr. Anderson was indeed a legitimate businessman. The problem, and the jury saw this, is that Mr. Anderson, in his own testimony and in his own text messages, provided some very incriminating statements against himself. And I would submit to the court that no amount of closing argument could unring the bell of that very incriminating evidence. Mr. Anderson, in his testimony, talked about how he knew that Mr. Jerry was dealing drugs. And the text messages, after he gets he's already holding $50,000 for Mr. Jerry, he then immediately gets another $160,000 that the jury accepted was a legitimate transaction, or was supposed to be, to buy this building. But now he's holding $210,000, and they have these series of text messages going back and forth about how Mr. Jerry needs that money back because he's got stocks that are going to double. I need this back. You couple the text messages from Mr. Jerry and Mr. Anderson with Mr. Anderson's some of the other testimony at trial about how Mr. Anderson was there during at least one of these transactions. The back and forth of money in sealed boxes, tens of thousands of dollars, over $100,000, Mr. Anderson getting up on the stand and talking about, well, I didn't really care where the money came from. I just needed it to buy my building. Well, what were you thinking when you got this text message, Mr. Anderson? Well, Mr. Jerry talks in riddles, and he always has. Those are the types of things that closing argument, additional time in closing argument, simply couldn't sufficiently address for this jury. They had already heard enough to acquit on Count 4, but it was Count 1, the conspiracy, and Count 5, the promotional money laundering that they seized on him. Unless the court has any further questions for me, I would ask the court to affirm both of Mr. Anderson's convictions. Thank you. Thank you, counsel. Rebuttal. Let me first start with addressing the plain error issue. What the panel told us was that appellate counsel did not state on appeal how his argument would have been different if allowed additional time, and without that argument that would establish prejudice, this court found itself unable to find plain error. That's what the panel stated. It was not the fact that they did a plenary review of this in search of the plain error standard, because it wasn't argued. They addressed the standard review presented by appellate counsel. Secondly— But your position is that argument would have been based on what was in the Rule 29 motion? Correct. And additional facts during trial— And the appeals panel had before it the Rule 29 motion. Had before it, but again, not called upon to review that particular document. I'm sure that, gentlemen, that you review stacks—and I can see the stacks of cases that you review every day. And I'm sure that if appellate counsel has not made the proper argument and could have been victorious had he just presented the correct argument, that you're not going to—you're not inclined to sit there and dig through that, because it's not your job. Your job is to decide the case as presented to you, not make arguments on behalf of the respective parties. And so, therefore, even if it was there, the panel clearly states, without that argument, they couldn't establish prejudice. And this—this is the closing argument. Five pages. Five pages following a trial that lasted 25 hours with numerous exhibits. Concerning the other issue concerning the government's knowledge of this, the court should be aware that this investigation by Mr. Anderson was prompted by two letters served independently on Judge McBride. The record reflects that basically those two letters were served on Judge McBride stating that this was all a sham. And those two letters were referred directly back to the United States government for review. Nothing ever happened. The record demonstrates, as far as I know, nothing ever happened from that. And stating again, the record does reflect, as stated in my opening statements, that there is a direct statement from one of the co-conspirators that he was told to lie on behalf of the government and the Drug Enforcement Administration. I agree with Judge Costa here that basically a potential solution to this is to grant a full hearing. Return this matter to the district court to grant a full hearing on whether these allegations have any import at all. And I think that after that full review, this panel was presented with a much better picture of what exactly happened below. Not only of the allegations that we allege the government knew, but all of the other allegations which no longer can be supported because those witnesses have recanted. They have stated they lied. That was the story I had to come up with. I would ask this court to consider, and again, I want to state my appreciation for this panel's hearing this matter, because I have lived with this case for a long time. And I have done this for about 26 years. And this man I've taken this matter personally. And I fully believe that Mr. Anderson, and I hope that I have convinced you that Mr. Anderson deserves a new trial in this matter. And I would appreciate if you would return an opinion in light of that. Thank you.